No. 24-3518
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

STUART REGES,

*Plaintiff-Appellant*,

v.

ANA MARI CAUCE; MAGDALENA BALAZINSKA; DAN GROSSMAN;
NANCY ALLBRITTON,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Washington at Seattle
No. 2:22-cv-00964-JHC
Hon. John H. Chun Presiding
_____

## BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT
_____

Omer A. Khan
Attorney at Law
6520 Lonetree Blvd., Suite 1010
Rocklin, CA 95765
T. (916) 789-9910
omer@okhanlaw.com

*Counsel for Amici Curiae*
James G. Martin Center for Academic
Renewal

## DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, Amici Curiae state that they are non-profit entities that do not have parent corporations and that no publicly held corporation owns 10 percent or more of any stake or stock in amici curiae.

No party or their counsel authored any part of this brief or made any monetary contribution toward its preparation or submission, and no person contributed any money intended to fund the preparation or submission of this brief.

Date:  October 2, 2024

## TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................. i

TABLE OF AUTHORITIES ................................................................ iii

INTEREST OF AMICI CURIAE ............................................................1

ARGUMENT .......................................................................................2

I.    OFFENSE MUST BE TOLERATED UNDER THE FIRST
AMENDMENT ...................................................................................2

II.    COURTS MUST PROTECT FIRST AMENDMENT RIGHTS BY
CONSIDERING ALL RELEVANT FACTORS .................................4

    A.    The District Court Failed To Qualitatively Evaluate The
Alleged Disruption ......................................................................5

    B.    The District Court Failed To Account For The University
Setting Of The Speech ................................................................9

    C.    The District Court Ignored That Defendant's Concerns Are
Pretextual ...................................................................................11

    D.    The District Court Disregarded That The University Invited
Political Comment On The Syllabus .........................................12

CONCLUSION ..................................................................................13

# TABLE OF AUTHORITIES

**Cases** ..................................................................................................**Page(s)**

*Adamian v. Jacobsen*,
    523 F.2d 929 (9th Cir. 1975) .........................................................9

*Adamian v. Lombardi*,
    608 F.2d 1224 (9th Cir. 1979) .......................................................7

*Allen v. Scribner*,
    812 F.2d 426, 430 (9th Cir. 1987) .................................................4

*Bauer v. Sampson*,
    261 F.3d 775 (9th Cir. 2001) .........................................................9

*Burnham v. Ianni*,
    119 F.3d 668 (8th Cir. 1997) .........................................................6

*Connick v. Myers*,
    461 U.S. 138 (1983)........................................................... 5, 8, 10

*Czurlanis v. Albanese*,
    721 F.2d 98 (3rd Cir. 1983) .........................................................13

*Dodge v. Evergreeen School District*,
    56 F.4th 767 (9th Cir. 2022) .......................................................10

*Gilbrook v. City of Westminster*,
    177 F.3d 839 (9th Cir. 1999) .........................................................5

*Hernandez v. City of Phoenix*,
    43 F.4th 966 (9th Cir. 2022). ........................................................4

*Hodge v. Antelope Valley Community College District*,

2014 WL 12776507 (C.D. Cal. Feb. 14, 2014) ...................................... 10, 11

*Hulen v. Yates*,

322 F.3d 1229, 1239 (10th Cir. 2003) ............................................................9

*Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ.*,

776 F.2d 443 (3d Cir. 1985) ............................................... 2, 6, 10

*Johnson v. Multnomah County*,

48 F.3d 420 (9th Cir.1995) ...........................................................6

*Josephson v. Ganzel*,

2024 WL 4132233 (6th Cir. Sept. 10, 2024)..................................................10

*Keyser v. Sacramento City Unified School District*,

265 F.3d 741 (9th Cir. 2001) ...........................................................8

*Kinney v. Weaver*,

367 F.3d 337 (5th Cir.2004). ...........................................................8

*NAACP v. Claiborne Hardware Co.*,

458 U.S. 886 (1982)...........................................................4

*Nichols v. Dancer*,

657 F.3d 929 (9th Cir. 2011) ...........................................................8

*Nunez v. Davis*,

169 F.3d 1222 (9th Cir. 1999) ......................................................10

*Pickering v. Board of Education*,

391 U.S. 563 (1968)...........................................................4

*Powell v. Gallentine*,

992 F.2d 1088 (10th Cir. 1993) ...................................................10

iv

*Rankin v. McPherson*,

    483 U.S. 378 (1987)................................................................ 10, 12

*Robinson v. York*,

    566 F.3d 817 (9th Cir. 2009) ........................................................12

*Rodriguez v. Maricopa County Community College District*,

    605 F.3d 703 (9th Cir. 2010). .........................................................9

*Settlegoode v. Portland Public Schools*,

    371 F.3d 503 (9th Cir. 2004) ..........................................................6

*Tinker v. Des Moines Independent Community School District*,

    393 U.S. 503 (1969).................................................................2, 3

*Terminiello v. City of Chicago*,

    337 U.S. 1 (1949)........................................................................3

*Zamboni v. Stamler*,

    847 F.2d 73 (3d Cir. 1988) ...........................................................13

**Other Authorities .........................................................Page(s)**

ED. LEVY & LEONARD WILLIAMS, FREEDOM OF THE PRESS FROM ZENGER TO
    JEFFERSON: EARLY AMERICAN LIBERTARIAN THEORIES (1966) ......................2

## INTEREST OF AMICI CURIAE

The James G. Martin Center for Academic Renewal is a nonprofit, nonpartisan organization that works to improve higher education. The purpose of the Martin Center is to discover and communicate ways to renew and fulfill the promise of higher education in North Carolina and across the country. Since 2003, the Martin Center has been a voice for excellence in higher education. The Center advocates responsible governance, viewpoint diversity, academic quality, cost-effective education solutions, and innovative market-based reform. It does this by studying and reporting on critical issues in higher education and recommending policies that can create change—especially at the state and local level.

Pursuant to Ninth Circuit Rule 29-2(a), amici state that all parties have consented to the filing of this brief.

**ARGUMENT**

## I.  OFFENSE MUST BE TOLERATED UNDER THE FIRST AMENDMENT

"If all printers were determined not to print any thing till they were sure it would offend no body, there would be very little printed." BENJAMIN FRANKLIN, AN APOLOGY FOR PRINTERS (1731), reprinted in ED. LEVY & LEONARD WILLIAMS, FREEDOM OF THE PRESS FROM ZENGER TO JEFFERSON: EARLY AMERICAN LIBERTARIAN THEORIES (1966), at 6.

It is axiomatic that the widespread exercise of free speech will inevitably offend someone. Indeed, the most critical conversations in our nation's history could not have been had without a certain segment of the public feeling significant offense. Just as planes cannot fly without friction, progress is powered by the discomfort generated by the critical discourse of a free people.

This tolerance is well established in First Amendment precedent. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) centered around a school that suspended two students for wearing black armbands protesting the Vietnam War. *Id.* at 504. The Supreme Court repudiated the school authorities, noting that "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Id.* at 508. Writing for the majority, Justice Fortas continued:

2

Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk [citation omitted]; and our history says that it is this sort of hazardous freedom— this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society.

*Id.* In fact, it is a "function" of the First Amendment to invite dispute. *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). It is not merely expected, but "ideal" when provocative and challenging speech "stirs people to anger," causing "profound unsettling effects as it presses for acceptance of an idea." *Id.* As a result, speech is protected unless it demonstrably produces a "serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* A lack of tolerance for such agitation "would lead to the standardization of ideas, either by legislatures, courts, or dominant political or community groups." *Id.*

It is under this canopy that courts are charged with reviewing punitive government action against the exercise of speech. The district court failed to assume this sacred role. Instead, the district court sanctioned Defendants' unconstitutional censorship efforts with little resistance. It equated the discomfort of listeners with disruption to university operation, it failed to acknowledge the higher threshold for disruption required to justify censorship in university settings, it ignored the pretextual reasons given by Defendants for Plaintiff's discipline, and it disregarded

3

the fact that Defendants invited political expression in one breath while punishing Plaintiff for taking up that invitation in the next. These are all factors relevant to the analysis; the district court considered none.

## II. COURTS MUST PROTECT FIRST AMENDMENT RIGHTS BY CONSIDERING ALL RELEVANT FACTORS

Public employees enjoy protection from retribution from their employers when speaking on issues of public importance. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 574 (1968). Under *Pickering*, courts are charged with balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern" against the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, *supra*, 391 U.S. at 568. It is undisputed that Plaintiff was speaking on a matter of public interest. Amended Order Re: Defendants' Motion To Dismiss And Cross-Motions For Summary Judgment (hereinafter, "Order") at 35:20-23. Speech on matters of public concern "occupies the 'highest rung of the hierarchy of [F]irst [A]mendment values.'" *Allen v. Scribner*, 812 F.2d 426, 430 (9th Cir. 1987)(quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982)).

The balancing test under *Pickering* necessarily involves a host of factors; "no hard-and-fast rules dictate where the balance is to be struck in a particular case." *Hernandez v. City of Phoenix*, 43 F.4th 966, 977 (9th Cir. 2022). Factors include

4

the content of the statements, the form (i.e., the time, place, and manner) of the statements, and the context in which the statements were made. *Connick v. Myers*, 461 U.S. 138, 153 (1983). Also relevant are the public employer's mission and effective functioning of the employer's operations. *Id.* Essentially, courts are obligated to put pen to paper and grapple with all of unique facts of the particular case before them. The district court failed to do so in the following ways.

### A. The District Court Failed To Qualitatively Evaluate The Alleged Disruption

The first issue with the district court's *Pickering* analysis is that it treats disruption as on-off switch; according to the district court, if the university demonstrates "disruption" in any capacity, it must prevail. See Order at 39:23, 40:15, 47:6. In contrast, a proper *Pickering* balancing assesses the *qualitative* significance of the disruption, not just uncritically accepts the government's contention that its functions were disrupted. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 867 (9th Cir. 1999)("[T]he more tightly the First Amendment embraces the speech, the stronger the showing of workplace disruption must be"). It is undisputed that "disruption necessarily accompanies" speech, and a "nominal showing of potential disruption is plainly inadequate." *Id.* at 869. The university was required to "do more than show mere disruption"; there must be a showing of "actual injury to ... legitimate interests" beyond the standard discomfort that accompanies unpopular speech. *Johnson v. Multnomah County*, 48 F.3d 420, 427 (9th Cir.1995). Even if

5

there was some evidence of disruption caused by Plaintiff's speech, "such a finding is not controlling… *Pickering* is truly a balancing test, with office disruption or breached confidences being only weights on the scales." *Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ.*, 776 F.2d 443, 454 (3d Cir. 1985). Instead of comparing the Defendants' allegations of disruption against numerous examples available from case precedent, the district court chose to rubber stamp Defendants' censorship at the expense of Plaintiff's First Amendment rights.

Defendants have failed to produce evidence of actual disruption, only offense. Under precedent, mere offense is insufficient to establish disruption. In *Settlegoode v. Portland Public Schools,* 371 F.3d 503 (9th Cir. 2004), this court held against the government employer, failing to find evidence of actual disruption, which could have included "impaired discipline or control by superiors, conflicts between co-workers or interference with [plaintiff's] performance of her duties" despite several teachers feeling "furious," "[o]utraged," and "[u]pset" by the letter. *Id.* at 514. The district court cites to student and teaching assistant complaints disapproving of Plaintiff's statements, but these essentially amount to the same type of typical discomfort that courts have repeatedly permitted as a result of speech. *See, generally*, Order at 40:1-46:10. Similar to the University's functions in *Burnham v. Ianni* 119 F.3d 668 (8th Cir. 1997), "campus life continued as normal, no classes were suspended or schedules altered and not a single act of violence occurred on

6

[university] premises." *Id.* at 680. Contrast the Defendant's allegations to this court's finding of disruption in *Adamian v. Lombardi*, 608 F.2d 1224 (9th Cir. 1979), where a professor was involved with 1) unauthorized student protests and activities during school hours on school property, 2) raucous catcalling after the university president had requested silence, 3) halting the governor's motorcade, and 4) leading a charge onto a field, causing a safety hazard. *Id.* at 1228. The same level of material disruption is simply not present in this case.

Remarkably, the district court takes the opinion of the Defendants itself as evidence of disruption. In the Order, the district court argued that because "UW *believed* that Plaintiff's statement was indeed interfering with the learning of many students, including Native American students," the balancing test favored Defendants. Order at 39:10. The district court's abdication of its responsibility is encapsulated by Footnote 17, where Defendant offered an out-of-court statement by a student who allegedly dropped out of the University as a result of Plaintiff's statement. Order at 43, fn 17. The district court overruled Plaintiff's objection by noting that it did not consider the statements as evidence for truth of the matter asserted, but instead asserted is as "reflective of the *University's understanding of disruption* caused by Plaintiff's speech." *Id.* It is critical to note here that the "University's understanding of disruption" does not even rise to the level of evidence of "nominal" disruption, let alone "actual" disruption. A court's analysis in

7

*Pickering* balancing should not be "like performing rational basis review, where [courts] uphold government action as long as there is some imaginable legitimate basis for it." *Kinney v. Weaver*, 367 F.3d 337, 363 (5th Cir.2004). The district court inappropriately deferred to Defendants' unsupported beliefs instead of weighing the evidence.

The district court also cited the opinion of the University's diversity recruiter, who expressed frustration that it was more difficult to recruit more Native American students. Order at 38:16-39:10. The district court brushed aside Plaintiff's contention that this harm is speculative because under *Connick*, an employer can take action before disruption is manifested. *Connick*, *supra*, 461 U.S. at 152. But the district court does not seriously scrutinize the diversity recruiter's predictions, again uncritically adopting the beliefs of government personnel as evidence of disruption. In truth, the diversity recruiter's opinion is not evidence of disruption, nor is it evidence of future disruption; it is guesswork that individuals, who could potentially enroll at the University, will potentially feel discomfort as a result of Plaintiffs' speech, and will potentially refrain from enrolling because they want to avoid said potential discomfort. As this court concluded in *Keyser v. Sacramento City Unified School District*, 265 F.3d 741 (9th Cir. 2001), only proffering "speculation" that the complained-of speech "must have significantly disrupted the provision of educational services" is not itself evidence of disruption. *Id.* at 749; *see also Nichols*

8

*v. Dancer*, 657 F.3d 929, 933–34 (9th Cir. 2011)(" an employer cannot prevail under *Pickering* based on mere speculation that an employee's conduct will cause disruption."). Defendants failed to meet their burden of proof, and the district court failed to offer even a cursory review of the Defendants' evidence. Had it done so, the district court would have come to the same conclusion.

### B.     The District Court Failed To Account For The University Setting Of The Speech

The second flaw in the district court's decision is it did not give appropriate deference to the university setting of Plaintiff's speech and the higher level of disruption the government must show as a result. Conflict is expected on university campuses given the academic autonomy of the college setting. *Hulen v. Yates*, 322 F.3d 1229, 1239 (10th Cir. 2003). Colleges and universities progress intellectual advancement through "discord and dissent," because "a diversity of views ensures that ideas survive because they are correct, not because they are popular." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010). The desire to "maintain a sedate academic environment" and avoid discomfort and unpleasantness that always accompanies an unpopular viewpoint is not sufficient to justify limitations on a professor's freedom to express himself on political issues. *Adamian v. Jacobsen*, 523 F.2d 929, 934 (9th Cir. 1975). This remains true even if the expression is couched in "vigorous, argumentative, unmeasured, and even distinctly unpleasant terms." *Id.*

9

To that end, courts have historically demonstrated a protective jealousy over the speech of college and university professors. *See, e.g.*, *Bauer v. Sampson*, 261 F.3d 775 (9th Cir. 2001)(holding *Pickering* balancing favored community college professor's criticism of the college president in the college newspaper); *Johnson*, *supra*, 776 F.2d at 454 (holding *Pickering* balancing favored professor's scathing criticism of the school's chemistry department despite internal issues it may have caused in the department); *Powell v. Gallentine*, 992 F.2d 1088, 1091 (10th Cir. 1993)(holding *Pickering* balancing favored a professor's criticisms regarding the university's grading system because, despite offense from other faculty members and administration, there was no evidence of actual disruption of the University's services); *Josephson v. Ganzel*, 2024 WL 4132233, at *9 (6th Cir. Sept. 10, 2024)(holding *Pickering* balancing favored medical school professor's discussion of treatment of children with gender dysphoria because there was no evidence of actual disruption).

In contrast, the district court relies nearly exclusively on cases involving other kinds of public employers. *See Rankin v. McPherson*, 483 U.S. 378 (1987)(law enforcement agency); *Connick*, *supra*, 461 U.S. at 138 (1983)(district attorney's office); *Dodge v. Evergreeen School District*, 56 F.4th 767 (9th Cir. 2022)(middle school); *Nunez v. Davis*, 169 F.3d 1222 (9th Cir. 1999)(municipal court). The one exception is *Hodge v. Antelope Valley Community College District*, 2014 WL

10

12776507 (C.D. Cal. Feb. 14, 2014), and the ruling in that case does not support the district court's argument given the court held that the *Pickering* balancing favored the college professor since "none of the students in [p]laintiff's April 2010 class complained about his comments or conduct to Defendant[.] . . . Nor have these students complained that [p]laintiff's comments interfered with their ability to learn." *Id.* at 10. The district court derives a rule from this statement that disruption can consist of such complaints *on their own*. Setting aside the fact that this language is dicta, the court's note does not announce such a rule; the court merely makes an observation regarding the dearth of evidence demonstrating disruption to the university. The court is not announcing that its ruling would be automatically different if such hypothetical evidence existed.

In summary, the district court's analysis improperly failed to consider the university setting of Plaintiff's speech. If it had, its *Pickering* analysis would have reached a different result.

### C.    The District Court Ignored That Defendant's Concerns Are Pretextual

Additionally, Defendants' concerns regarding the disruptive nature Plaintiff's speech was entirely pretextual, a fact that did not enter into the district court's analysis. As acknowledged by the district court, Plaintiff was permitted to state his parody of the land acknowledgement "next to his faculty office door, at the bottom of his emails, and by discussing with colleagues… all of which he did with no

11

limitation by Defendants." Order at 46:21-24. Neither Defendants nor the district court explained why inclusion of Plaintiff's statement in the syllabus was inherently disruptive whereas Plaintiff's statement in these other settings was not. In reality, the line drawn by Defendants is arbitrary; none of the evidence proffered by Defendants indicates that students or staff would be any less offended if the Plaintiff continued to offer his opinion in other contexts besides the syllabus.

Defendants' punishment for inclusion of the parody in the syllabus is entirely pretextual; the true impetus for the discipline is that Plaintiff picked the wrong position. *See Robinson v. York*, 566 F.3d 817, 825 (9th Cir. 2009)("Given the evidence that Defendants may have been more concerned with the nature and frequency of Robinson's reports of misconduct than his adherence to the formal chain of command, a fact-finder could conclude that Defendants' application of the chain of command policy was pretextual.") Under *Pickering* balancing, courts must consider that at some point, "concerns are so removed from the effective functioning of the public employer that they cannot prevail over the free speech rights of the public employee." *Rankin*, *supra*, 483 U.S. 378, 390–391. The district court failed to do so.

### D. The District Court Disregarded That The University Invited Political Comment On The Syllabus

Lastly, the District Court did not factor in that the University invited professors to include the land acknowledgement on their syllabi, and thus originated

12

the alleged disruption themselves. Order at 1:19-21. Under *Pickering* balancing, Defendants cannot rely on disruption which they themselves instigated or exacerbated to outweigh Plaintiff's first amendment rights. *Zamboni v. Stamler*, 847 F.2d 73, 79 (3d Cir. 1988); *Czurlanis v. Albanese*, 721 F.2d 98, 107 (3rd Cir. 1983)

In this case, Defendants complained Plaintiff expressed a political opinion in the course syllabus at the same time they requested Plaintiff to express the opposite political opinion in the very same document. By opening the door to political expression on its syllabus, Defendants invited all of the downstream effects that inevitably follow such expression, which includes the alleged disruption Defendants now decry. Defendants cannot open Pandora's box and punish Plaintiff afterward for taking the opportunity to speak his conscience.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, and the case remanded for trial to consider Plaintiff's claims on its merits.

Date: October 2, 2024

Respectfully submitted,
*/s/ Omer A. Khan*

Omer A. Khan
Attorney at Law
*Attorney for Amici Curiae*
James G. Martin Center for Academic Renewal

13

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number**: <u>No. 24-3518</u>

I am the attorney or self-represented party.

**This brief contains 2,911 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *_/s/ Omer A. Khan_*          **Date** <u>October 2, 2024</u>

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 2, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Date:  October 2, 2024                    Respectfully submitted,
                                          */s/ Omer A. Khan*

                                          Omer A. Khan
                                          Attorney at Law